JOSEPH PATRICK SUMMEY, Plaintiff v. RONALD BARKER, FORSYTH COUNTY SHERIFF; and HARTFORD INSURANCE COMPANY, SURETY; MICHAEL SCHWEITZER, chief jailer of Forsyth County, in their official capacities; LINDA SIDES; JOE MADDUX, CORRECTIONAL MEDICAL SERVICES, INC., d/b/a CORRECTIONAL MEDICAL SYSTEMS a/k/a CORRECTIONAL MEDICAL SERVICES, Defendants

No. COA02-13

(Filed 3 December 2002)

### 1. Discovery— scheduling order—failure to designate expert—sanction

The trial court did not abuse its discretion in an action for not promptly treating a hemophilic inmate's nose bleed by denying plaintiff's motion for an extension of time to designate an expert witness where plaintiff did not comply with a consent discovery scheduling order. The fact that the defendants may have had notice of the expert witnesses from earlier depositions did not relieve defendant of the obligation to comply with the order.

### 2. Prisons and Prisoners— hemophilic inmate's bleeding nose—promptness of treatment—summary judgment for defendants

The trial court did not err by granting summary judgment for defendants in an action for not promptly treating a hemophilic inmate's nose bleed where defendant's forecast of evidence indicates that plaintiff was checked by a nurse upon his return from the courthouse and was not bleeding and that he was taken to the hospital immediately when he began bleeding; plaintiff did not timely designate his expert witnesses; and plaintiff did not bring forth countervailing evidence or make any arguments in opposition to defendant's motion for summary judgment.

Judge Greene dissenting.

Appeal by plaintiff from order entered 24 September 2001 by Judge Clarence W. Carter, Superior Court, Forsyth County. Heard in the Court of Appeals 8 October 2002.

*Parrish Smith & Ramsey, L.L.P., by Steven D. Smith, for plaintiff-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by Lisa Frye Garrison and Alan W. Duncan, for Linda Sides and Correctional Medical Services, defendant-appellees.*

SUMMEY v. BARKER

[154 N.C. App. 448 (2002)]

*Womble, Carlyle Sandridge & Rice, by Allan R. Gitter and Oliver M. Read, IV, for Ronald Barker, Hartford Insurance Company and Michael Schweitzer defendant-appellees.*

WYNN, Judge.

Following the trial court's grant of summary judgment dismissing plaintiff Joseph Patrick Summey's medical malpractice and negligence actions, plaintiff presents two issues on appeal to this Court: (1) Did the trial court erroneously exclude his expert witness' testimony as a discovery sanction for plaintiff's failure to designate his expert in a timely fashion; and (2) Did the trial court err in granting summary judgment in favor of the defendants? We answer both questions, no; and therefore, we uphold the trial court's grant of summary judgment in favor of defendants.

The underlying facts to this appeal tend to show that on 22 October 1996, the Forsyth County Detention Center held plaintiff, a hemophiliac, on charges of illegally removing a child across state lines. The next day, plaintiff's hemophilia condition was evaluated by North Carolina Baptist Hospital and he was released back to the detention center. The following day, after his first appearance in criminal court, plaintiff contends that his nose started to bleed at the courthouse. Apparently, he was taken back to the detention center where a nurse employed by defendant, Correctional Medical Services, attended to him but did not observe any bleeding. Several hours later, at around 11:00 p.m., plaintiff's nose began to bleed rapidly and he was transported to Baptist Hospital for treatment.

From that set of facts, plaintiff brought actions against Forsyth County Sheriff, Ronald Baker, Hartford Insurance Company (Surety for the Sheriff's bond), and Chief Jailer Michael Schweitzer alleging various collective acts of negligence apparently arising from their alleged failure to ensure that he was provided timely medical treatment for his nose bleed. Plaintiff also brought actions against certain medical providers including Correctional Medical Systems and its employees Linda Sides and Joe Maddux alleging collective acts of negligence which appear to amount to claims of medical negligence.

Plaintiff voluntarily dismissed his initial action in June 1999 and re-filed it in October 1999; after which, the trial court entered a Consent Discovery Scheduling Order requiring plaintiff to designate his expert witnesses within 30 days of the conclusion of the appeal

on 9 March 2000.[1] Plaintiff should have designated his experts by 3 May 2001, but did not do so until 4 September 2001. Defendants moved for summary judgment alleging there were no genuine issues of material fact and citing plaintiff's failure to designate his experts in accordance with the Consent Discovery Scheduling Order. Plaintiff moved for an extension of time to designate his experts on 4 September 2001. The trial court denied plaintiff's motion and granted defendant's motion for summary judgment.

## Discovery Sanctions

[1] "If a party fails to identify an expert witness as ordered, the court shall, upon motion by the moving party, impose an appropriate sanction, which may include dismissal of the action, entry of default against the defendant, or exclusion of the testimony of the expert witness at trial." N.C. Gen. Stat. 1A-1, Rule 26(f1) (2001). The choice of sanctions lies within the court's discretion and will not be overturned on appeal absent a showing of abuse of discretion. *See Routh v. Weaver*, 67 N.C. App. 426, 429, 313 S.E.2d 793, 795 (1984).

In this case, plaintiff failed to designate his experts by 3 May 2001 as he should have according to the 9 March 2000 Consent Discovery Scheduling Order. In fact, plaintiff did not designate his experts until 4 September 2001, almost four months after the ordered date, and more than one month after defendants notified plaintiff of his non-compliance. Apparently, the trial judge chose to exclude any testimony from plaintiff's experts as a sanction for plaintiff's non-compliance with the discovery order.[2] Surely, evidence in the record showing that plaintiff failed to comply with the discovery order for several months, supports the conclusion that the trial court did not abuse its discretion by excluding the proffered testimony. Moreover, the fact that the defendants may have had notice of the expert witness from earlier depositions, did not relieve the plaintiff of the obligation to comply with the subsequent consent order. Accordingly, we hold that the plaintiff has not shown that the trial court abused its

---

1. Defendants Barker, Schweitzer and Hartford Insurance Company appealed a 14 December 1999 order denying their N.C.R. Civ. P. 12(b)(6) motion to dismiss. In the motion, defendants claimed public official's immunity barred plaintiff's negligence claims. This Court affirmed the trial court's denial in an opinion filed 3 April 2001. *See Summey v. Barker*, 142 N.C. App. 688, 544 S.E.2d 262 (2001).

2. Plaintiff, in his 4 September 2001 motion for an extension of time, included the names of his experts and transcripts of their depositions taken in June 1999, prior to the voluntary dismissal of plaintiff's first complaint against these defendants.

discretion in denying his motion for an extension of time to designate expert witnesses.

## Review of Summary Judgment

[2] Under N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The moving party bears the burden of showing that there are no genuine issues of material fact. *See Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 394, 499 S.E.2d 772, 775 (1998). "The evidence is to be viewed in the light most favorable to the nonmoving party." *Id.*

Plaintiff brought three claims against defendants: (I) negligence for not calling plaintiff's doctor when the nose bled at the courthouse; and, for not having done something sooner before plaintiff's nose began bleeding rapidly that night; (II) cruel and unusual punishment; and (III) breach of fiduciary and statutory duties. Plaintiff further alleged general acts which appear to constitute medical negligence on the part of the medical providers. On review of the evidence in the light most favorable to the plaintiff, we uphold the trial court's grant of summary judgment in favor of defendants.

First, defendants' forecast of evidence indicates plaintiff was checked by the infirmary nurse upon his return from the courthouse and his nose was not bleeding at that time nor did his clothes or person have any blood on them; and, that night when his nose began bleeding rapidly, plaintiff was taken to the hospital immediately. Second, in medical malpractice actions, the "plaintiff must demonstrate by the testimony of a qualified expert that the treatment administered by the defendant was in negligent violation of the accepted standard of medical care in the community and that defendant's treatment proximately caused the injury." *Huffman v. Inglefield*, 148 N.C. App. 178, 182, 557 S.E.2d 169, 172 (2001) (citations omitted). Since plaintiff did not timely designate his expert witnesses, plaintiff is unable to prove the defendants' behavior was a negligent violation of the accepted standard of medical care. Further, plaintiff did not bring forth any countervailing evidence or make any arguments in opposition to defendants' motion for summary judgment.

In sum, we uphold the trial court's exclusion of plaintiff's expert witness testimony as a sanction for failing to timely comply with the

consent discovery order. We further affirm the trial court's grant of summary judgment in favor of defendants.

Affirmed.

Judge McGEE concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting in part.

As (I) the trial court erred in failing to consider lesser sanctions for plaintiff's discovery misconduct and (II) I disagree with the majority that this action was solely a medical malpractice action, I dissent in part.

I

In this case, the trial court's exclusion of plaintiff's experts had the same effect as a dismissal of plaintiff's medical malpractice action. While the imposition of sanctions for discovery misconduct is within the discretion of the trial court, this Court has held that before the trial court selects as severe a sanction as dismissal, it must first determine the appropriateness of lesser sanctions. *Wilder v. Wilder*, 146 N.C. App. 574, 577, 553 S.E.2d 425, 427 (2001). In other words, the trial court must make findings and conclusions indicating it has considered less drastic sanctions. *Id.* Less drastic sanctions in this case could have included staying further proceedings until plaintiff complied with the trial court's order, finding plaintiff in contempt of court, or requiring plaintiff to pay the reasonable expenses, including attorney's fees, caused by his failure to comply. *See* N.C.G.S. § 1A-1, Rule 37(b)(2) (2001) (available sanctions for failure to obey Rule 26(f) discovery conference order).

In this case, the trial court made no findings with respect to the appropriateness of lesser sanctions. As such, the trial court's exclusion of plaintiff's experts and its resulting grant of summary judgment with respect to plaintiff's medical malpractice action must be reversed and remanded for consideration of lesser sanctions.

II

Even if the trial court's exclusion of plaintiff's experts was justified, this Court still would need to consider whether summary judgment with respect to defendants Sheriff Ronald Barker, Chief Jailer

Michael Schweitzer, and the Hartford Insurance Company was appropriate as plaintiff's suit against these defendants was not a medical malpractice action.

A medical malpractice action is defined as "a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C.G.S. § 90-21.11 (2001). None of the aforementioned defendants can be considered a health care provider. *See id.* (defining a health care provider). Furthermore, plaintiff does not allege the jail personnel, as opposed to the medical personnel available at the correctional facility, failed to furnish professional medical services which they were capable of rendering. Instead, plaintiff argues the jail personnel failed to fulfil their fiduciary and statutory duties under N.C. Gen. Stat. § 160A-59 et seq. and the North Carolina Constitution by not timely bringing his medical needs to the attention of a designated health care provider.

As plaintiff's action against the jail itself does not constitute a medical malpractice action, it is of no consequence that, as stated by the majority, upon exclusion of plaintiff's experts by the trial court, plaintiff was not able to meet the evidentiary burden required in a medical malpractice action. *See Huffman v. Inglefield*, 148 N.C. App. 178, 182, 557 S.E.2d 169, 172 (2001) (in medical malpractice actions, the plaintiff must "demonstrate by the testimony of a qualified expert that the treatment administered by the defendant was in negligent violation of the accepted standard of medical care in the community and that [the] defendant's treatment proximately caused the injury"). Accordingly, summary judgment in favor of the sheriff, the chief jailer, and the jail's insurer on this basis alone would be error.

Where the trial court, however, grants a motion for summary judgment without delineating its reasons for doing so, as the trial court did in this case, this Court must determine whether there is any basis for upholding the trial court's order. Because I agree with the majority that there are no genuine issues of material fact with respect to plaintiff's negligence claim against the sheriff, the chief jailer, and the jail's insurer, I would therefore affirm summary judgment with respect to these defendants.