WHISNANT v. TEACHERS' & STATE EMPLOYEES' RET. SYS. OF N.C.

[191 N.C. App. 233 (2008)]

HARRY WHISNANT, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PETITIONER-
PLAINTIFF v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF
NORTH CAROLINA, A CORPORATION; BOARD OF TRUSTEES OF THE TEACHERS'
AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A
BODY POLITIC AND CORPORATE; DEPARTMENT OF STATE TREASURER, RETIRE-
MENT SYSTEMS DIVISION, RICHARD H. MOORE, TREASURER OF THE STATE OF
NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES TEACHERS' AND STATE
EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA (IN HIS INDIVIDUAL AND OFFICIAL
CAPACITIES); AND THE STATE OF NORTH CAROLINA, RESPONDENTS-DEFENDANTS

No. COA07-1433

(Filed 1 July 2008)

## Public Officers and Employees— disability—Social Security offset—vesting of benefits

In an action arising from the State's attempt to collect an overpayment of disability benefits that resulted from a failure to offset Social Security payments, the trial court properly dismissed petitioner's class action for failure to state a claim, and properly ruled against petitioner on the whole record test. Although there was no setoff provision when petitioner began work, his benefits did not vest until after the legislature altered the statute governing those benefits.

Appeal by petitioner from judgment entered 25 June 2007 by Judge J.B. Allen, Jr., in Wake County Superior Court. Heard in the Court of Appeals 30 April 2008.

*Schiller & Schiller, PLLC, by Marvin Schiller, David G. Schiller, and Kathryn H. Schiller, for petitioner.*

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for respondents.*

ELMORE, Judge.

Harry Whisnant (petitioner) began employment with the State Department of Corrections in 1985. He worked continuously until 1999, when he suffered an on-the-job injury rendering him disabled and unable to perform his work duties. In April of 2000, petitioner began to receive both long-term disability income through the State and Social Security disability benefits from the federal government.

On or about 28 October 2005, Thomas G. Causey, the chief of the Benefits Section of the North Carolina Retirement Systems Division,

notified petitioner that although petitioner's long-term disability benefits should have been offset by the amount that he received from Social Security, the system had failed to do so. The retirement system therefore contended that petitioner owed $30,561.39 in overpayments.[1] The retirement system reduced petitioner's monthly payments by $359.00 for eighty-four months in order to recoup the overpaid amount.

On 31 March 2006, petitioner filed a petition against the Teachers' and State Employees' Retirement System of North Carolina; the Board of Trustees of the Teachers' and State Employees' Retirement System of North Carolina; the Department of State Treasurer, Retirement Systems Division; and the State of North Carolina (collectively, respondents) contesting respondents' decision to reduce the amount of long-term disability benefits paid to him. Each side filed a motion for summary judgment, and on 19 September 2006, Administrative Law Judge (ALJ) Beecher R. Gray dismissed petitioner's actions against the Teachers' and State Employees' Retirement System of North Carolina, the Board of Trustees of the Teachers' and State Employees' Retirement System of North Carolina, and the State of North Carolina for failure to state a claim, and granted respondents' motion for summary judgment with regard to the Department of State Treasurer, Retirement Systems Division. On 24 January 2007, the Board of Trustees of the Teachers' and State Employees' Retirement System issued a final agency decision adopting the ALJ's decision in its entirety.

On 23 February 2007, petitioner filed a petition for judicial review. At that time, he also added State Treasurer Richard H. Moore and filed a class action complaint. Respondents filed several documents, including a response to the request for judicial review, a motion to sever petitioner's claims, a motion to dismiss all respondents but the Department of State Treasurer, Retirement Systems Division, and a motion to dismiss the class action complaint for failure to state a claim upon which relief can be granted.

On 25 June 2007, the trial court granted respondents' motions to sever and to dismiss all respondents other than the Department of State Treasurer, Retirement Systems Division. The trial court also affirmed the final decision of the Board of Trustees of the Teachers'

---

1. The Retirement System originally sought repayment of $48,260.64. However, upon the realization that petitioner disclosed the fact that he was receiving Social Security payments as early as May of 2002, the Retirement System reduced the amount owed to $30,561.39 and extended the repayment period to seven years.

and State Employees' Retirement System and dismissed the class action complaint. Petitioner now appeals.

On appeal, petitioner first argues that the trial court erred in dismissing the class action complaint for failure to state a claim. We disagree.

The thrust of petitioner's argument is that because the statute governing employee benefits had no setoff when he began work, he is entitled to receive the benefits as they were under that scheme. Respondents counter, and the trial court agreed, that because petitioner was not vested in the earlier plan, respondents were free to change it. The statute in effect at the time petitioner began employment was N.C. Gen. Stat. § 135-5(d4) (1985), which stated:

> Allowance on Disability Retirement of Persons Retiring on or after July 1, 1982.—Upon retirement for disability, in accordance with subsection (c) of this section on or after July 1, 1982, a member shall receive a service retirement allowance if he has qualified for an unreduced service retirement allowance; otherwise the allowance shall be equal to a service retirement allowance calculated on the member's average final compensation prior to his disability retirement and the creditable service he would have had had he continued in service until the earliest date on which he would have qualified for an unreduced service retirement allowance.

N.C. Gen. Stat. § 135-5(d4) (1985). Our legislature changed this scheme in 1988, when it adopted a new policy under which disabled workers received disability benefits in lieu of retirement, which were offset by any payments received in the form of Social Security benefits.

Petitioner undertakes an exhaustive analysis of our case law, focusing heavily on *Faulkenbury v. Teachers' & State Employees Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997). In support of his cause, petitioner represents to this Court that "*Faulkenbury's* pivotal *ratio decidendi* is that the disability retirement statutes in existence at the time the employees began their public service are contractual offers which are binding obligations of the Retirement Systems for determining the formula for calculating the disability compensation due the now disabled employees." Petitioner relies on the following language from *Faulkenbury*: "at the time the plaintiffs started working for the state or local government, the statutes provided what the plaintiffs' com-

pensation in the way of retirement benefits would be. The plaintiffs accepted these offers when they took the jobs. This created a contract." *Id.* at 690, 483 S.E.2d at 427. However, the Supreme Court expanded on this statement later in its opinion:

> We believe that when the General Assembly enacted laws which provided for certain benefits to those persons who were to be employed by the state and local governments and *who fulfilled certain conditions*, this could reasonably be considered by those persons as offers by the state or local government to guarantee the benefits *if those persons fulfilled the conditions*. When they did so, the contract was formed. . . . [P]ursuant to the plaintiffs' contracts, they were promised that *if they worked for five years*, they would receive certain benefits if they became disabled.

*Id.* at 691-92, 483 S.E.2d at 427-28 (emphases added). It is clear to this Court that the terms of the contract are established at the time the benefits vest, *i.e.*, five years after petitioner began employment.

Indeed, our recent cases make it clear that such is the case:

> The relationship between State employees and the Retirement System is contractual in nature. In North Carolina, contractual rights vest in the Retirement System after five years of membership. The contract is embodied in state statute and governed by statutory provisions as they existed at the time the employee's contractual rights vested. [Members of the Retirement System] had a contractual right to rely on the terms of the retirement plan *as these terms existed at the moment their retirement rights became vested.*

*Wells v. Consolidated Jud'l Ret. Sys. of N.C.*, 136 N.C. App. 671, 673, 526 S.E.2d 486, 488-89 (2000) (quotations and citations omitted) (emphasis added) (alteration in original). Likewise, in a case decided this year, we stated unequivocally that "[i]n the context of retirement benefits, a contractual obligation exists once the employee's rights have vested." *Tripp v. City of Winston-Salem*, 188 N.C. App. 577, 583, 655 S.E.2d 890, 894 (2008) (quotations and citation omitted). Petitioner's entire argument is therefore without merit. Because petitioner's benefits did not vest prior to the time that the legislature altered the statutory benefit scheme, he failed to state any complaint upon which relief could be granted.

Petitioner's only other argument on appeal is that the trial court erred in ruling against him on the basis of the whole record test. In

this argument, petitioner states that the Board's findings of fact did not support its conclusions of law, rendering its decision arbitrary, capricious, and erroneous as a matter of law. As petitioner acknowledges, however, "[t]he primary legal issue in the Administrative Appeal is identical to the legal issue that was before the Superior Court on the Retirement System's Motion to Dismiss." We have already held that the trial court's holding on that issue was correct. Accordingly, this contention, too, lacks merit. Based on the uncontroverted evidence that petitioner's rights in benefits did not vest until after the legislature altered the statute governing those benefits, we hold that the trial court properly held in respondents' favor.

Affirmed.

Judges McGEE and STEPHENS concur.